Stanford *v.* Howard.

STANFORD　*v.*　HOWARD.

(*Jackson.*　June 3, 1899.)

BILLS. AND NOTES.　*Given to recapture money lost at gaming, not enforceable.*

If the loser at poker repossesses himself of the identical money lost, under pretense of borrowing it from the winner, and gives his note for the amount, such note is not collectible. It is a valid recapture of the money.

Code construed: §§ 3161–3163 (S.); § 2440–2442 (M. & V.); § 1771–1773 (T. & S.).

Cases cited and approved: Hutchinson *v.* Peters, M. & Y., 263; Kegler *v.* Miles, M. & Y., 426; Neely *v.* Lyon, 10 Yer., 473; Collomb *v.* Taylor, 9 Hum., 689; Garrett *v.* Vaughn, 1 Bax., 119; Whiteside *v.* The Executors, Cooke, 383; Nichol *v.* Batton, 3 Yer., 474; Woodson *v.* Gordon, Peck, 197; Revier *v.* Hill, 1 Sneed, 405; Rucker *v.* Wynne, 2 Head, 620.

FROM HENDERSON.

Appeal in error from Circuit Court of Henderson County. LEVI S. WOODS, J.

BARHAM & TIMBERLAKE for Stanford.

WM. M. TAYLOR and F. M. DAVIS for Howard.

WILKES, J. This was a suit before a Justice of the Peace upon a note executed by Howard

to Stanford for $200, dated December 21, 1896, and due one day after date.

On appeal to the Circuit Court from a judgment against defendant the cause was tried before the Court without a jury, and plaintiff was denied any relief, and he has appealed and assigned errors. The execution of the note is not denied, and it is not claimed to have been paid, but it is said that it was executed on Sunday, and based upon a gambling consideration, and is therefore void.

It appears that plaintiff and defendant, with Overman and Joiner, two other persons, engaged in a game of poker, commencing on Saturday night, at the rooms of defendant. Joiner, about daylight, left the game. He also left all of his money, about $23, having lost it in the fortunes of the game. The other parties continued the game until some time on Sunday morning—one witness says about ten o'clock, another says about time to go to Sunday school. All the parties appear to have gone to bed for a short while after the game closed. As a result of the game, Joiner lost all he had, about $23; Overman won $25 or $30; Dr. Howard, the defendant, lost $216 out of $218, which he had when he entered the game, and plaintiff was a winner of something over $200.

Dr. Howard states that after three o'clock he was so drunk he did not know what he was do-

ing, and has no recollection of what transpired. Other parties testify that while all parties were drinking, no one was so intoxicated as not to know what was being done. Dr. Howard sent for plaintiff and asked him if he knew what had become of his money, when plaintiff informed him he had won it. Howard then said he needed the money for a special purpose, and would like to borrow it from plaintiff. Plaintiff loaned him $200, and took his note payable one day after date, and this is the note sued on. Plaintiff's theory is that this note is in nowise connected with the gambling transaction, that it is simply and purely one for borrowed money, and that it cannot be definitely stated that the money 'loaned was that won from defendant, as the money changed owners several times during the progress of the game, and besides he had $80 of money when he first entered the game, and had other money in his pocket after he had let defendant have the $200.

It has been held that if a person lose specific property at gaming, and afterwards peaceably regain possession of it, he may retain it against the winner. *Hutchinson* v. *Peters,* Martin & Yerger, 263; *Kegler* v. *Miles,* Martin & Yerger, 426; *Neely* v. *Lyon,* 10 Yer., 473, 475; *Collomb* v. *Taylor,* 9 Hum., 689, 702; *Garrett* v. *Vaughn,* 1 Bax., 119.

In the first above styled case Wallace won a

mare from Burdin, and he was put in possession of her and sold her to Anderson. She escaped from Anderson and went back to Burdin's stable, who refused to give her up, but sold her to Hale, who sold her to Edwards, and Edwards swapped her to Peters. Anderson claimed the mare from Peters, and Peters thinking he had the best title gave her up, and Peters' administrator brought an action of assumpsit for her value against Edwards on the idea that his title had failed. The contest was thus between the title derived from Wallace, the winner, and that derived through a sale from Burdin, the loser, after he had recaptured her. The decision was in favor of the latter title under the charge of the Court to that effect. We have no case more to the point than this in our own books, and under it we would feel justified in holding that if Howard as a fact retook the identical money he lost to plaintiff, even though by a peaceable trespass, he could hold it as against the winner.

It is urged it cannot be said with absolute certainty that the money which Stanford let Howard have was the identical money which he had received from him upon the wager or betting. In addition, he did not recapture or retake it, but obtained it under a contract or promise to repay it the next day. We cannot doubt, under the record, but that Howard, when he applied for the money, intended to keep it after he re-

ceived it, and to refuse to give it up, but such was not his purpose, as expressed to Stanford; on the contrary, there was an express promise to repay it to him as his own and as a loan. Stanford could as well let him have other money, and Howard in that event could not have treated that as a recapture of his own money.

We are referred by opposing counsel to two Kentucky cases bearing somewhat on the matter, and yet not directly, but they are diametrically opposed to each other.

The first is the case of *Bell* v. *Parker,* decided by the Supreme Court of Kentucky, in April, 1835. In that case Bell won a horse from Parker at cards, and the horse was delivered to him. Bell some time afterwards sold the horse back to Parker, and took his note for $75. He failed to pay the note, and Bell took judgment on it. This judgment was enjoined in Chancery under the facts as stated, but the injunction was dissolved in the Supreme Court, and the winner was allowed to recover on the note. The Court held that when the horse was delivered the original gaming transaction was closed, and the horse was Bell's property. The sale to Parker was a new contract, based upon a valid consideration, and one that Bell had a right to make to Parker or anyone else, and was not a revival or renewal of the original contract. This case is also reported in 28 Am. Dec., 55, and is

said to be supported by the cases of *Downs* v. *Quarrels,* Little's Select Cases, 489, 12 Am. Dec., 337, and *Greathouse* v. *Throckmorton,* 7 J. J. Marsh., 16. This case is evidently based upon the proposition that the loser cannot recover property lost at gaming after it once comes to the possession of the winner, but such a rule, while good at common law, does not prevail under the statutes of this State. *Whiteside* v. *The Executors,* Cooke, 383; Shannon, Secs. 3161, 3162, 3163, *et seq.; Nichol* v. *Batton,* 3 Yer., 474.

In the later case, decided in Kentucky, 1846, the case of *Brown* v. *Watson,* 6 B. Monroe, 588, it appeared that Watson staked a horse upon a race with Brown. The race was not run, but Watson gave up the horse as a forfeit to Brown under their contract. Some time after Brown sold the horse to Watson, and took his note, and took judgment on it, and the Court below perpetually enjoined its collection, and the Supreme Court affirmed the decree of the lower Court. The Court treated the matter as if the horse was actually won on a race. The Court held that the contract was illegal under the Act of 1833, and that a Court of Equity could relieve. It would be difficult, if not impossible, to reconcile these two Kentucky cases, but after all they are not directly in point.

The statutes of Tennessee provide a remedy for the recovery of money or property lost at gam-

ing (Shannon, Sec. 3161), and it has been held that a note of a third person delivered up on a wager may be recovered under this statute if sued for in time. *Woodson* v. *Gordon,* Peck, 197; *Revier* v. *Hill,* 1 Sneed, 405.

It has also been held that gaming securities given by the loser are void, and equity will compel them to be delivered up and canceled; so that the statutory remedy is not exclusive. *Rucker* v. *Wynne,* 2 Head, 620, 621.

While the matter is not free from difficulty, we are of opinion the decree of the Chancellor in this case should be sustained.

We think it quite clear that the money which Howard borrowed from Stanford was the same money, or part of it, that Stanford had won from him. It was about the same amount, and they were the only two players who had this amount. So that the identical money which Howard lost during the game was the same that Stanford won and let him have upon the note. While the matter took the guise of a contract of loan between Howard and Stanford, it is clear that Howard looked upon it as a peaceful recapture of his own money which he intended to hold. If it had been a horse, and Stanford, after the horse was delivered to him, had loaned him to Howard to ride, Howard, though ostensibly receiving him for this purpose, could have repudiated the bailment and kept the horse as

his own, regardless of the contract to return him. So with the money, the only difference being that the horse could more easily be identified than the money. If Stanford had won a horse and saddle, and Howard had recaptured the horse but not the saddle, he could keep the horse and lose the saddle. And so with the money—if Howard did not succeed in getting all, he could retain so much as he could get and let the remainder go.

There can be no doubt but that Howard could, under the statute, have sued Stanford and collected back the money, but if on trial this note is held valid, all Stanford would have to do would be to offset Howard's demand by the note, and thus defeat a recovery, and work a complete evasion of the law.

Upon the whole case we are content to affirm the decree of the Chancellor refusing any relief on the note.

The appellant will pay costs.